# Exhibit A

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF MISSISSIPPI
### GREENVILLE DIVISION

NEAL HALEY and SHERRY HALEY, ET AL.                    PLAINTIFFS

V.                                          NO. 4:09CV00094-WAP-DAS

MERIAL, LIMITED, ET AL.                                 DEFENDANTS

## ORDER

This matter is before the court on the plaintiffs' motion for appointment of a special

master (# 142) and Merial's Motion to Strike Scandalous and Unfounded Accusations (# 145).

### Appointment of Special Master

On April 6, 2010, in response to allegations made in a whistleblower complaint filed with

the United States Department of Occupational Safety and Health Administraion ("OSHA"), the

plaintiffs filed a motion for preliminary injunction and/or temporary restraining order (# 32) in

this case.[1]  The plaintiffs filed a revised motion for a preliminary injunction (# 33) on April 12.[2]

The whistleblower complaint alleged that after she had been notified that Merial was named in

this lawsuit, Dr. Kari Blaho-Owens was instructed by her immediate supervisor, Dr. Felipe Dolz,

to destroy "documents that were likely relevant to . . . [this] lawsuit and were in her possession"

and that she was further instructed "to decline to generate any new data regarding HeartGard as

requested by internal [l]egal counsel, Adam Bassing."  By Order (# 39) dated April 20, 2010 the

---

[1]The plaintiffs had received a copy of the whistleblower complaint pursuant to a Freedom of Information Act request.

[2]In their revised motion, the plaintiffs withdrew their request for a TRO.  The motion for a preliminary injunction is currently pending before the district judge.

court granted the plaintiffs' request for limited discovery regarding the preliminary injunction issue. On September 20 the plaintiffs took Dr. Blaho-Owens' deposition.

In support of the instant motion, the plaintiffs argue, *inter alia*, that based upon Dr. Blaho-Owens' testimony she was directed by Dr. Dolz to destroy documents and because of other alleged misconduct by Merial and its counsel, including discovery violations, the court should appoint a special master to investigate.

Rule 53(a) (1) of the Federal Rules of Civil Procedure provides:

> Unless a statute provides otherwise, a court may appoint a master only to: (A) perform duties consented to by the parties; (B) hold trial proceedings and make or recommend findings of fact on issues to be decided without a jury if appointment is warranted by: (i) some exceptional condition; or (ii) the need to perform an accounting or resolve a difficult computation of damages; or (C) address pretrial and posttrial matters that cannot be effectively and timely addressed by an available district judge or magistrate judge of the district.

Subparagraphs (A) and (B) do not apply here. Accordingly, a special master may only be appointed if the court is unable to "effectively and timely" address the pretrial issues in this case. Furthermore, Rule 53(a)(3) provides that "[i]n appointing a master, the court must consider the fairness of imposing the likely expense on the parties and must protect against unreasonable expense or delay." The appointment of a special master is the exception, not the rule. *See, e.g. Duvall v. EcoQuest, Intern., Inc.,* No. 4:06cv1168, 2008 WL 4890570, at * 10 (E.D. Mo. Nov.12, 2008); *Cintron v. Vaughn,* No. 3:69 cv 13578, 2007 WL 4225790, at * 2 (D. Conn. Nov.28, 2007); *Inventory Locator Service LLC v. Partsbase, Inc.,* No. 02-2695, 2006 WL 1646091, at * 2 (W.D.Tenn. June 14, 2006); *see also Ash Grove Cement Co. v. Wausau Ins. Co.,* No. 05-2339, 2007 WL 689576, at * 3 (D.Kan. Mar.1, 2007) ("The Advisory Notes to the 2003 Amendments

to Rule 53(a)(1) indicate that, 'A master should be appointed only in limited circumstances[,]' * * * [and] 'only when the need is clear.' ")

Having thoroughly considered the parties' briefs and voluminous exhibits submitted on this issue, the court finds that appointment of a special master is simply not warranted in this case. The basis of the plaintiffs' motion for a preliminary injunction is the whistleblower's allegations that she was ordered to destroy documents and not generate additional data related to the effectiveness of HeartGard. However, Dr. Blaho-Owens' deposition testimony reveals she was allegedly advised to destroy only one document which consisted of a hard copy of an email from Mr. Bassing onto which she had written "notes" during a meeting with Dr. Dolz on September 11, 2009.[3] Dr. Blaho-Owens testified she had planned to convert these notes into a "summary document" which would include "the entire history" of HeartGard. And, while Mr. Bassing's email did not include a request for such a summary, Dr. Blaho-Owens testified that she "felt" that the summary would have been "helpful" to internal counsel.[4] Nevertheless, she further testified that despite receiving orders from Dr. Dolz to destroy the hard copy of the email from

---

[3]Dr. Blaho-Owens testified that during this meeting with Dr. Dolz, she "was making notes . . . of those things [she intended to include in a summary document] and how. . . [she] was going to put it together." (Blaho-Owens Dep. 36:1-5.)

[4]Dr. Blaho-Owens testified that regulatory agencies only asked for data that covered a "snapshot in time." (Blaho-Owens Dep. 81:21-24.) She testified that at the time Dr. Dolz told her to stop generating new data, she had been generating "data from the adverse events database that contained Heartgard data over the entire life of the product" or aggregate data. (Blaho-Owens Dep. 81:7-20.) According to Dr. Blaho-Owens, Dr. Dolz only wanted her to "provide counsel with existing reports that had been submitted to the FDA." (Blaho-Owens Dep. 36:11-15.)

Mr. Bassing, she never did.[5]  Moreover, Dr. Blaho-Owens confirmed that she did not destroy any

other documents or withhold any data; she had no knowledge of *instructions* to anyone else to

either destroy documents or not to generate data; and she had no knowledge that anyone else

destroyed any documents.  (*See* Blaho-Owens Dep. at 87:25 - 88:1-12; 146:5 - 148:13.)

      The plaintiffs argue that because Merial did "nothing" (for eleven days following Dr.

Blaho-Owens' report of the alleged misconduct) to keep Dr. Dolz "from spreading his

destruction policy throughout Merial," there is a "possibility" that he instructed other employers

"under him" to destroy documents and/or ordered that additional information should not be

generated.  Among other things, the plaintiffs suggest that issues a special master should

investigate include Dr. Dolz's "conduct related to document production, alleged destruction of

documents, interaction with other employees related to document production . . ." and the

"veracity and completeness with which Merial has responded to discovery."  However, mere

"possibility" is too tenuous and clearly insufficient cause to justify the foreseeable expense and

delay that would be associated with appointment of a special master in this case.  *See* Fed. R.

Civ. P. 53(a)(3) (courts "must protect against unreasonable expense or delay").

      The plaintiffs also point to Dr. Blaho-Owens' testimony that prior to her termination Dr.

---

[5]Dr. Blaho-Owens and her attorney actually provided a copy of that document to counsel for Merial for the first time on the day of her deposition.  And, by Order (# 157) dated November 12 the court granted Merial's motion for a Rule 502(d) protective order and for leave to produce this document with redactions of counsel's mental impressions and portions of Dr. Blaho-Owens' notes.  However, a complete copy of the document was provided to the court for *in camera* review.  Dr. Blaho-Owens' notes are very limited and relate directly to a list of six topics in-house counsel had listed for discussion with litigation counsel.

Dolz obtained a personal document shredder for his office.[6]  The plaintiffs claim that determining

what documents have been shredded are outside their "discovery powers."  Yet the plaintiffs

offer no real explanation why this task is more suitable for a special master and cannot be

accomplished through available discovery procedures.  Ultimately, the plaintiffs' desire to

determine what, if any, documents have been shredded by Dr. Dolz rests on mere suspicion,

especially in light of the fact that the only document alleged to have been the subject of an order

for destruction contains no substantive information regarding the facts at issue in this lawsuit.

Accordingly, granting the instant request would amount to sanctioning a fishing expedition based

upon speculation and conjecture.

Neither do the plaintiffs' allegations of Merial's bad faith and misconduct in discovery

support the instant request.  Indeed, the court finds that only the plaintiffs' complaint regarding

Merial's production of "tif" files warrants more than a footnote.[7]  The plaintiffs complain that

Merial's production of "tens of thousands" of these "one page 'image' documents" is an attempt

to make document production "difficult, time consuming, and expensive" for the plaintiffs.

Without making any finding here, the court will simply note that the record before the court fails

to show that there was any discussion among counsel regarding the particular electronic format

for production of these documents or any good faith attempt to resolve this issue.  Nevertheless,

---

[6]Dr. Blaho Owens testified that Dr. Dolz obtained a shredder for his office sometime around March or April 2010.  (*See* Blaho-Owens Dep. 100:9-21.)  She testified that his shredding documents in his office "seemed odd" to her because shredder bins had been provided for employees to discard confidential documents.  *Id.*

[7]Plaintiffs' claims of Merial's "false sworn discovery responses" were resolved by Order (# 77) on plaintiffs' motion to compel dated July 7.  While the court has addressed a number of motions to compel filed by the plaintiffs, in no instance has the court found evidence of bad faith or any other evidence sufficient to warrant sanctions against Merial or its attorneys.

the court finds that at this point, the proper and more appropriate avenue for resolution of this and the other discovery issues raised by the plaintiffs here is a Rule 37 motion, not a request for appointment of a special master. Accordingly, for this reason and the ones stated above, the plaintiffs' request for appointment of a special master is hereby **DENIED**.

Motion to Strike

With their motion to strike, Merial and its counsel seek an order striking the plaintiffs' accusations that Merial and its attorneys gave false responses to discovery requests and made false statements in open court. These accusations are contained in the plaintiffs' response (# 139) to Merial's motion for protective order related to a 30(b)(6) deposition notice. The plaintiffs' statements are based exclusively upon Dr. Blaho-Owens' allegations and testimony that she was instructed to destroy documents.[8] However, the record before the court indicates that Dr. Blaho-Owens' testimony is contradicted by sworn interrogatory responses and affidavits signed by Mr. Bassing and Dr. Dolz and by Merial's response to the whistleblower complaint in the OSHA proceedings. Consequently, there is clearly a disputed issue of fact between Merial and Dr. Blaho-Owens regarding whether Dr. Dolz instructed her to destroy any document. Therefore, the court finds that the objectionable accusations lodged against Merial and its counsel by the plaintiffs and their counsel were unwarranted.[9] Nevertheless, because the

---

[8]As pointed out by the defendants, there is no evidence in the record before the court that any document relevant to this case has been destroyed. Accordingly, plaintiffs' allegations that Merial and/or its counsel made false statements about whether any documents have been destroyed are clearly unsubstantiated.

[9]The court notes that counsel on both sides of this action are attorneys of the highest caliber with excellent reputations. The court is confident that this type motion will no longer be necessary, and any further unnecessary delays will not occur.

6

objectionable accusations relate to the preliminary injunction issue, the court will not strike them from the record. *See Jackson v. State Farm Fire & Cas. Co.*, No. 06-7202, 2010 WL 724108, at *10 (E.D. La. Feb. 22, 2010) (denying a motion to strike scandalous accusations because they were relevant to the summary judgment issue). Accordingly, the motion is hereby **DENIED**.

      **SO ORDERED** this, the 15th day of December, 2010.

**/s/ David A. Sanders**
**U. S. MAGISTRATE JUDGE**
