UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| MERIAL LLC, | CIVIL ACTION FILE |
| | NO. 1:11-cv-02888-JOF |
| Plaintiff and Counterclaim-Defendant, | |
| v. | |
| BAYER HEALTHCARE LLC, | |
| Defendant and Counterclaim-Plaintiff. | |

**Reply Memorandum of Law in Further Support of Bayer Healthcare LLC's
Motion to Compel Production of Documents and Things**

i

# TABLE OF CONTENTS

**PAGE**

PRELIMINARY STATEMENT ..............................................................................1

ARGUMENT ..........................................................................................................2

I.    Documents Pertaining to Heartgard Plus Efficacy are Highly Relevant ........2

II.   Further Proof that this Evidence is Relevant is that Merial Has Sought the Very Same Evidence in its Own Discovery Requests...............................5

III.  Merial's Remaining Objections Are Meritless...............................................9

CONCLUSION .....................................................................................................10

**PAGE**

# TABLE OF AUTHORITIES

**CASES**

*ACMG of Lousiana, Inc. v. Towers Perrin, Inc.*, No. 04-1338, 2007 U.S.
    LEXIS 91291 (N.D. Ga. Dec. 11, 2007) ............................................................5
*Adkins v. Christie*, 488 F.3d 1324 (11th Cir. 2007)...................................................4
*Haley v. Merial, Ltd*., No. 4:09CV00094-WAP-DAS, 2010 U.S. Dist.
    LEXIS 104256 (N.D. Miss. Sept. 17, 2010)....................................................2, 9
*Osmose, Inc. v. Viance, LLC*, 612 F.3d 1298 (11th Cir. 2010) .............................4, 5

**OTHER AUTHORITIES**

Fed. R. Civ. P 26(b)(1)...............................................................................................4

Defendant Bayer respectfully submits this reply memorandum of law in further support of its motion to compel plaintiff Merial to produce documents pursuant to Federal Rule of Civil Procedure 37(a) and Local Rule 37.1.

## PRELIMINARY STATEMENT

Although Merial defends its refusal to produce relevant documents by suggesting that its claims in this litigation are narrowly focused only on the validity of Dr. Blagburn's study, its own complaint belies that assertion. For example, Merial's complaint alleges that its Heartgard Plus is as effective as Bayer's Advantage Multi and that its Heartgard Plus is not resistant to heartworms. Furthermore, Merial itself has requested discovery going far beyond Dr. Blagburn's study, including facts as to the effectiveness of Bayer's Advantage Multi. Basic fairness compels that Bayer be permitted the opportunity to explore these issues in discovery and to gain access to Merial's documents relevant to these issues, especially given that Merial has taken discovery on these issues of Bayer. In any event, the law is clear that discovery should extend to information that is likely to lead to the discovery of admissible evidence, and the documents Bayer has requested clearly fall into that category. In light of this standard and Merial's allegations, this court should compel Merial to produce the requested documents.

Merial's defense that production of these documents would be burdensome is without merit. In fact, Merial has already collected and produced these documents in other cases. *See Haley v. Merial, Ltd.*, No. 4:09CV00094-WAP-DAS, 2010 U.S. Dist. LEXIS 104256 (N.D. Miss. Sept. 17, 2010); *Haley v. Merial, Ltd.*, No. 4:09CV00094-WAP-DAS, 2010 U.S. Dist. LEXIS 82183 (N.D. Miss. July 7, 2010). Thus, there would be no significant burden on Merial to produce these documents in this litigation.

## ARGUMENT

### I. Documents Pertaining to Heartgard Plus Efficacy Are Highly Relevant

As demonstrated in Bayer's opening brief, Merial's First Amended Complaint contains broad allegations regarding the efficacy of Heartgard Plus that go well beyond Merial's "tests prove" theory. For example, Merial alleges that "no legitimate study has concluded that Advantage Multi is more effective than HEARTGARD when both products are properly used in accordance with their respective FDA-approved labels," First Am. Compl. ¶ 2, and that, "[w]hen properly administered, HEARTGARD is highly effective in protecting dogs against developing heartworm disease." *Id.* ¶ 16.[1] Merial also makes general

---

[1] *See also, e.g.,* First Am. Compl. ¶ 50 (alleging sales representatives have falsely stated "(1) Advantage Multi is superior to HEARTGARD and other heartworm preventives; (2) Advantage Multi is the only product that is effective against heartworms; (3) Advantage Multi is the best heartworm product; (4) Heartworm resistance to current heartworm

2

allegations about heartworm resistance and the MP3 strain of heartworm that are central to the motivation for Dr. Blagburn's study. *See*, *e.g.*, *id.* ¶ 33 ("The Heartworm Resistance Claim is false and/or misleading because companion animals have no known exposure to the MP3 strain."). Evidence of Heartgard Plus' efficacy—or lack thereof—would show that Heartgard Plus is in fact less effective than Advantage Multi, that some heartworm strains are in fact resistant to Heartgard Plus, and that Dr. Blagburn's study is reliable and supported by other studies in the field—all of which directly counter Merial's allegations.

Merial, in its opposition, acknowledges its broad allegations. Opp. Br. at 18. Incredibly, instead of withdrawing them, it simply ignores them and selectively focuses on those allegations touching upon its "tests prove" claim. Merial contends that Bayer is not entitled to discovery on its broad allegations because "Merial need not prove these statements to prevail on its 'tests prove' claim". *Id.* That is not the test for discovery. And Merial cites no case to support the novel proposition that a defendant is entitled to discovery only on some allegations in the complaint, but not others deemed by plaintiff as not necessary to prove. In fact, Bayer is entitled to defend itself with respect to *every* allegation in the complaint,

---

preventives is a real and increasing problem in clinical practice; and (5) the FDA is considering a recall of HEARTGARD based on the Blagburn Report").

not merely the allegations Merial chooses to invoke for the purposes of motion practice.

In any event, even if Merial had not made these broad allegations, the Eleventh Circuit has made it plain that information regarding product efficacy in general can be relevant even in a "tests prove" case.  *See Osmose, Inc. v. Viance, LLC*, 612 F.3d 1298, 1317 & n.13 (11th Cir. 2010) (citing evidence that "undermine the broad conclusions that [defendant] attempts to attribute to its studies" as well as plaintiff's "considerable evidence of other tests" suggesting that the underlying claims in defendant's advertisements were false).

In attempting to distinguish *Osmose*, Merial suggests that evidence should not be discoverable unless there is an explicit statement that it will be directly relied upon by the court.  *See* Opp. Br. at 13-14 (contending that Bayer is not entitled to similar information because the *Osmose* court "apparently" placed no weight on these studies).  That argument turns the broad rules of discovery on their head.  Discovery is not allowed only when the court indicates that it will rely on the documents at issue; rather, discovery is permissible as long as it is "reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P 26(b)(1); *accord Adkins v. Christie*, 488 F.3d 1324, 1330 (11th Cir. 2007) (citing "liberal spirit" of discovery rules when overturning grant of summary judgment

4

due to denial of motion to compel); *ACMG of Lousiana, Inc. v. Towers Perrin, Inc.*, No. 04-1338, 2007 U.S. LEXIS 91291, at *5 (N.D. Ga. Dec. 11, 2007) (granting motion to compel).  As the *Osmose* decision indicates, documents pertaining to Heartgard Plus' efficacy certainly fall within this broad standard.[2]

## II. Further Proof that this Evidence Is Relevant Is that Merial Has Sought the Very Same Evidence in Its Own Discovery Requests

Although Merial would have this court believe that evidence of efficacy beyond Dr. Blagburn's study is irrelevant, Merial itself has requested this evidence from Bayer.  Not only do Merial's discovery requests show the relevance of this evidence, but further, it would be manifestly unjust to allow Merial to take this broad discovery of Bayer and then refuse to produce the same category of documents to Bayer so that it can defend against Merial's claims.

For example, Merial's Request for Production of Documents No. 14 sought "[a]ll documents and things pertaining to any report or regulatory filings you have made with any federal, state, local, foreign, or other governmental agency regarding the efficacy of Advantage Multi."  In response, Bayer produced documents which included Adverse Drug Event Reports for Advantage Multi and

---

[2]  Notably, it was counsel for Merial who also served as counsel for the defendants in *Osmose*, who introduced the very same type of evidence before the Eleventh Circuit that it is now claiming to be inadmissible.  *See* Brief of Appellants at 9, *Osmose, Inc. v. Viance, LLC*, 612 F.3d 1298 (11th Cir. 2010) (No. 09-15563-DD) (describing tests conducted by third parties in support of the alleged truth of the underlying claims in defendant's advertising).

complaints regarding potential lack of efficacy. *See also, e.g.,* Merial's Request for Production No. 13 ("[a]ll documents and things pertaining to customer testimonials, feedback, and comments concerning Advantage Multi"). If Merial can ask Bayer to produce efficacy documents, Bayer certainly should be entitled to ask Merial to do the same.

As another example, ***after*** filing its opposition to the instant motion, Merial served additional discovery requests, including Request for Admission No. 12 in which it asked Bayer to "[a]dmit that no follow-up research proving that heartworms are developing resistance has been published since the Blagburn Study." Merial's recent promulgation of this request contradicts its argument that studies proving or disproving Dr. Blagburn's underlying conclusions are irrelevant. Given all of the topics on which Merial has sought discovery, it would be manifestly unfair to prevent Bayer from gathering evidence to the contrary.[3]

---

[3] While not central to this motion, Merial argues in its opposition that the Blagburn Advertisements are misleading. This is simply incorrect. In fact, Dr. Blagburn himself testified at his deposition that the advertisements were not false or misleading given the results of his study. In particular, he stated that the advertisements (1) did not make claims that Advantage Multi is generally superior to the other tested products with respect to heartworm strains other than the MP3 strain, (2) reflected that the study was conducted only against the MP3 strain of heartworms, and that the prevalence of this strain was unknown in the wild, (3) reflected that only a single dose of each preventive was applied, in accordance with regulatory protocols, and (4) accurately reflected the results of his study, which concluded that that only 12.5% of the dogs in the Heartgard Plus group remained heartworm free. Sept. 5, 2012 Blagburn Dep. Tr. at 369:7-360:3, 366:4-17, 367:6-375:15.

This is not the only example of Merial saying one thing to the court in its opposition brief but doing another for its own discovery practices. Merial unambiguously states – and distinguishes cases on the basis – that "the reliability of the Blagburn study is not at issue" in its "tests-prove" case. Opp. Br. at 15. Yet, at the recent deposition of Dr. Blagburn, Merial spent the better part of six hours questioning Dr. Blagburn's study about the reliability of his study.[4] Merial's questions included:

- Whether Heartgard was properly administered to the Heartgard test dogs, Sep. 5, 2012 Blagburn Dep. Tr. at 118:20-120:23, 175:3-13;

- Whether Dr. Blagburn utilized the most appropriate method when counting the heartworms in the test dogs, *id.* at 121:21-126:6, 335:18-336:9;

- Whether the dogs Dr. Blagburn found to have heartworms would have been likely to develop severe clinical disease, *id.* at 153:23-154:16;

- Why Dr. Blagburn chose to infect the test dogs with 100 heartworm larvae and whether it was realistic that a dog in the wild would be infected with 100 heartworm larvae, *id.* at 107:19-110:5;

- Whether the appropriate blinding techniques were used, *id.* at 130:22-134:14;

- Where Dr. Blagburn obtained the dogs used in the study, *id.* at 101:20-102:13;

---

[4] The deposition transcript of Dr. Blagburn has been designated confidential and outside counsel only by Bayer pursuant to the Protective Order. The citations in this brief to specific questions asked of Dr. Blagburn does not constitute a change in that designation except as to the specifically cited questions.

- Whether the dogs were genetically tested, inbred or siblings, *id.* at 102:14-103:23;

- Why certain Heartgard test dogs received the minimum Heartgard dosage, *id.* at 333:17-335:17;

- Whether Bayer had any role in writing the study report, *id.* at 104:13-107:5; and

- Whether Dr. Blagburn and his team accurately recorded communications during the study, *id.* at 217:9-220:9.

Despite Merial's contentions in its opposition, the questions it asked in its deposition of Dr. Blagburn went directly to "the reliability of the Blagburn study."[5] If Merial is going to take discovery on efficacy and on the validity of Dr. Blagburn's study, Bayer certainly should be entitled to take discovery on the efficacy of Merial's product.[6]

---

[5] Even statements in Merial's own opposition brief, while attempting to limit Merial's claims, demonstrate that Merial is challenging the study's reliability. *See, e.g.,* Opp. Br. at 5 ("To make matters worse, Dr. Blagburn counted worm fragments as worms."); *id.* at 4 ("Thirty days after infection, the animals in the treatment groups received a single dose of the commercial heartworm preventives, despite the fact that the FDA-approved labels for each of the tested products, including Heartgard and Advantage Multi, call for monthly, rather than single, one-time dosing.").

[6] Merial's attempt to portray Bayer's requests and motion to compel as part of a smear campaign against Merial are equally baseless. On November 15, 2010, the Court entered a stringent Protective Order, agreed to by both parties, providing each party with enhanced protections to guard against, among other things, inappropriate disclosure of any sensitive business information. Under this rubric, parties are entitled to designate documents as "confidential" and "outside counsel only."

### III. Merial's Remaining Objections Are Meritless

In addition to its objections on relevancy grounds, Merial continues to object to Bayer's requests on the basis that they are overly broad and that production would be unduly burdensome. Opp. Br. at 19. It further contends that production of these documents would substantially delay the case on the basis that it would have to "search for, collect, review and produce documents from numerous additional custodians (in addition to the custodians whose documents have already been searched), search numerous additional sources of information (e.g., shared drives), and ultimately produce tens of thousands of additional documents." *Id.*

These arguments are disingenuous. Merial was already ordered by another court on at least two occasions to collect and produce the requested documents. *See Haley v. Merial, Ltd.*, No. 4:09CV00094-WAP-DAS, 2010 U.S. Dist. LEXIS 104256, *5-10 (N.D. Miss. Sept. 17, 2010) (mandating Merial to produce documents in response to numerous requests related to Heartgard Plus' efficacy); *Haley v. Merial, Ltd.*, NO. 4:09CV00094-WAP-DAS, 2010 U.S. Dist. LEXIS 82183, at *8 (N.D. Miss. July 7, 2010) (mandating Merial to produce all documents related to the whistleblower complaint of Dr. Kari Blaho-Owens related to Heartgard Plus' efficacy). Given that it has already compiled, reviewed and scanned these documents, Merial has no basis for these objections.

Moreover, it is outrageous for Merial to attempt to take advantage of the late stage of discovery to excuse its failure to produce documents at an earlier date. ***Merial was served with these requests on January 27, 2012***. Merial had nearly eight months to respond to these requests. It is no fault of Bayer's that Merial chose to delay in doing so. Merial should be ordered to produce these documents immediately.

## CONCLUSION

For these reasons, Bayer respectfully moves this Court to compel Merial to produce documents and things in response to Bayer's Second Document Requests and Things Nos. 1-5 and 7-10.

This 13th day of September, 2012.

Respectfully submitted,

WOMBLE CARLYLE SANDRIDGE & RICE PLLC

s/ Robert R. Ambler, Jr.
Robert R. Ambler, Jr.
(rambler@wcsr.com)
Attorney Bar Number: 014462
Russell A. Williams
(rwilliams@wcsr.com)
Attorney Bar Number: 141659

271 17th Street, NW, Suite 2400
Atlanta, GA 30363-1017
(404) 872-7000
(404) 879-2924 (fax)


DEBEVOISE & PLIMPTON LLP


s/ Michael Schaper
David H. Bernstein
(dhbernstein@debevoise.com)
Michael Schaper
(mschaper@debevoise.com)
*Admitted Pro Hac Vice*

919 Third Avenue
New York, New York 10022
(212) 909-6737
(212) 521-7952 (fax)

*Attorneys for Defendant
Bayer HealthCare LLC*

11

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| MERIAL LLC, ) | CIVIL ACTION FILE |
| ) | NO. 1:11-cv-02888-JOF |
| Plaintiff and Counterclaim-Defendant, ) | |
| ) | |
| v. ) | |
| ) | |
| BAYER HEALTHCARE LLC, ) | |
| ) | |
| Defendant and Counterclaim-Plaintiff. ) | |

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 5.1(C)

This is to certify that the Reply Memorandum of Law in Further Support of Bayer Healthcare LLC's Motion to Compel Production of Documents and Things was prepared using Times New Roman 14 point font in accordance with Local Rule 5.1(C).

                                                                                          s/ Michael Schaper
                                                                                          Admitted Pro Hac Vice
                                                                                          Attorney for Bayer HealthCare LLC

Debevoise & Plimpton LLP
919 Third Avenue
New York, NY 10022
Telephone: (212) 909-6737
Email: mschaper@debevoise.com

2

Robert R. Ambler, Jr.
Womble Carlyle Sandridge & Rice, LLP
271 17th Street, NW, Suite 2400
Atlanta, GA 30363-1017
Telephone: (404) 872-7000
Email: rambler@wcsr.com

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| MERIAL LLC, )<br>)<br>Plaintiff and Counterclaim-Defendant, )<br>)<br>v. )<br>)<br>BAYER HEALTHCARE LLC, )<br>)<br>Defendant and Counterclaim-Plaintiff. )<br>) | CIVIL ACTION FILE<br>NO. 1:11-cv-02888-JOF |

**CERTIFICATE OF SERVICE**

I hereby certify that on September 13, 2012, I caused to be electronically filed the Reply Memorandum of Law in Further Support of Bayer Healthcare LLC's Motion to Compel Production of Documents and Things using the CM/ECF system which will automatically send email notification of such filing to the following attorneys of record:

    Courtland L. Reichman (creichman@McKoolSmith.com)
    Jill Wasserman (jwasserman@McKoolSmith.com)

                                    s/ Michael Schaper
                                    Admitted Pro Hac Vice
                                    Attorney for Bayer HealthCare LLC

Debevoise & Plimpton LLP
919 Third Avenue
New York, NY 10022
Telephone: (212) 909-6737
Email: mschaper@debevoise.com

Robert R. Ambler, Jr.
Womble Carlyle Sandridge & Rice, LLP
271 17th Street, NW, Suite 2400
Atlanta, GA 30363-1017
Telephone: (404) 872-7000
Email: rambler@wcsr.com