**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| MERIAL LLC, | CIVIL ACTION FILE |
| | NO. 1:11-cv-02888-JOF |
| Plaintiff and Counterclaim-Defendant, | |
| | |
| v. | |
| | |
| BAYER HEALTHCARE LLC, | |
| | |
| Defendant and Counterclaim-Plaintiff. | |

**BAYER'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION**
**FOR PARTIAL SUMMARY JUDGMENT**

Defendant Bayer HealthCare LLC ("Bayer") respectfully submits this memorandum of law in support of its motion, pursuant to Rule 56 of the Federal Rules of Civil Procedure and Local Rule 56.1, for partial summary judgment.

**Preliminary Statement**

This false advertising case between two competitors in the pet medicine market has already been narrowed by virtue of the parties' agreement to dismiss all claims for monetary relief. *See* Joint Stipulation of Partial Voluntary Dismissal dated September 7, 2012 (Docket No. 56). All that remains are the parties' cross-claims against each other for prospective injunctive relief. Of those claims, the

only ones that need be tried are those ads that the parties intend to continue to disseminate. Any ads that have run their course and will no longer be disseminated are ancient history for these purposes and should not be considered at trial. That is because prospective injunctive relief against ads that already have been discontinued would be futile, and thus any dispute over such ads is moot.

With these black-letter principles in mind, Bayer has attempted to reach agreement with Merial LLC ("Merial") to further streamline this case so that the trial can focus solely on the parties' current and prospective advertising. Merial, though, has refused to agree to dismissal of its claims against any of the discontinued ads; instead, it insists on proceeding with its request for injunctive relief against ads that Bayer discontinued long ago and has confirmed in writing it will never run again. Because Merial has refused to agree to dismissal by stipulation of these moot claims, Bayer is forced to bring this motion for partial summary judgment to seek court dismissal of these moot claims.

Partial summary judgment also is warranted because some of Merial's claims are plead as being wholly contingent on the outcome of unrelated claims, and thus are not ripe for adjudication. It is axiomatic that federal courts should not give advisory opinions on issues that are not in dispute, yet that is exactly what Merial asks this Court to do. Specifically, Merial alleges that if – and *only* if –

Merial's advertising for its own flea and tick preventive (Frontline Plus) is found false or misleading by the Court, then certain of Bayer's Advantage II and K9 Advantix II must also be found to be false and misleading.  Because Merial's claims are contingent on the hypothetical outcome of a pending litigation, Merial's unripe contingent claims should be dismissed.

This motion rest entirely on legal principles and undisputed facts.  Bayer seeks partial summary judgment to promote judicial efficiency and save party resources by significantly narrowing the issues for remaining discovery and trial.

### Statement of Facts

**1.  <u>The NAD and NARB Proceedings</u>.**

This lawsuit has its genesis in a challenge Bayer filed in 2010 before the National Advertising Division of the Council of Better Business Bureaus (the "NAD"), the premier self-regulatory arbiter of advertising disputes in the United States.  In the NAD proceeding, Bayer challenged Merial's advertisements for Frontline Plus as false and misleading because the ads deceived consumers with respect to the efficacy and speed of kill of Frontline Plus.  Declaration of Cynthia Hughes-Coons, dated November 5, 2012 ("Hughes-Coons Decl."), Ex. A.

As it does in this Court, Merial disputed Bayer's allegations, and argued that its advertising was not false and misleading.  *Id.* at 5-9.  The NAD disagreed.  It

found that Merial's advertising falsely communicated that Frontline Plus kills all fleas and ticks for an entire month. Accordingly, the NAD recommended that Merial discontinue its advertisements. *Id.* at 13.

Merial promised to make most of the NAD's requested changes, but it appealed one aspect of the NAD decision to the National Advertising Review Board ("NARB") – namely, the way Merial used the green ninja characters in its ad, which, the NAD found, falsely suggested that Frontline Plus kills all fleas and ticks immediately upon application. Hughes-Coons Decl., Ex. B at 3. In 2011, a panel of four NARB experts, chaired by Professor Ken Bernhardt of Georgia State University, unanimously rejected Merial's appeal. The NARB affirmed NAD's holding that Merial's advertising falsely communicated that Frontline Plus worked immediately to kill all fleas and ticks. *Id.* at 4.

Although Merial told the NARB that it would "give due consideration" to its decision, Merial failed to comply with either the NAD or NARB decisions. Instead, it continued to disseminate Frontline Plus advertisements utilizing the same or similar language and imagery that both the NAD and NARB had found to be false, deceptive and misleading. This led to a third self-regulatory proceeding, back before the NAD, in which NAD warned Merial that it was not in compliance with the NAD's and NARB's decisions. Hughes-Coons Decl., Ex. C at 4-6.

Because Merial persisted in its refusal to comply, the NAD referred Merial to the

Federal Trade Commission ("FTC") for possible enforcement proceedings. *Id.* at 6.

### 2. **The FTC Review and Merial's Declaratory Judgment Complaint**.

An NAD referral to the FTC is a rare step – it is reserved only for those few

occasions where an advertiser refuses to comply with the NAD's or NARB's

recommendations.  Such a referral is rarer still with respect to a party that agreed to

participate in the self-regulation process and even participated in an appeal to the

NARB, and that affirmed throughout the process that it would take into account the

NAD's and NARB's decisions.  Merial's contempt for the self-regulation process

is all the more surprising given that every other marketer of pet medicines that has

had its advertising reviewed by the NAD has agreed to comply with the NAD's

decisions, including in other cases where the NAD has recommended modification

of claims that improperly suggested that a product eliminated 100% of fleas or

ticks.  *See, e.g., Farnam Pet Products (Adams Flea & Tick Spot on for Dogs)*, (Oct.

23, 2012) (ad that showed cartoon animation of product killing all fleas and ticks

immediately upon application falsely communicated that the product offers

immediate and rapid elimination of 100% of fleas and ticks; advertiser agreed to

accept NAD's recommendations); *see also Farnam Companies, Inc. (Bio Spot for*

*Dogs and Bio Spot for Cats),* Case # 5259R (June 20, 2011) (ad claiming, *inter*

*alia*, that Bio Spot keeps pets "free" of fleas and ticks); *Novartis Animal Health (Sentinel Flavor Tabs)*, Case # 5470 (June 11, 2012) (ad claiming that lufenuron was 100% effective at preventing the development of adult fleas while spinosad was not); *Animal Health Division of Bayer HealthCare, LLC (Advantage and K9 Advantix)*, Case # 5200 (Aug. 4, 2010); *Elanco Animal Health Division (Comfortis Chewable Tablets)*, Case # 5134 (Jan. 8, 2010); *Summit VetPharm LLC (Vectra 3D and Vectra)*, Case # 5090 (Sept. 25, 2009) (ad implying that Vectra 3D killed 100% of fleas within 6 hours); *Summit VetPharm (Vectra 3D and Vectra)*, Case # 4906 (Sept. 8, 2008) (ad claiming that only Vectra 3D killed 100% of fleas in 12 hours of application).[1]

Upon receipt of the NAD's referral, the FTC opened a review of Merial's advertising.  Unhappy to find its advertising being scrutinized by the FTC, Merial thereafter brought this case seeking a declaratory judgment that its advertisements for Frontline Plus were not false or misleading.  The filing of that declaratory judgment complaint effectively halted the FTC's investigation while this litigation is pending, and put in the hands of this Court the task of reviewing the advertising that the NAD and NARB had already found false and misleading.  Hughes-Coons Decl., Ex. D.

---

[1]    Attached as Exhibits N through T of the Hughes-Coons Decl.

So that its proceeding would not look as obviously like a tactical effort to derail the FTC's review, Merial tacked on makeweight Lanham Act and state law false advertising claims against advertisements for two categories of Bayer products:  (1) Bayer's flea and tick control products K9 Advantix II, K9 Advantix, Advantage II and Advantage, which Merial claimed falsely advertised 100% efficacy, and (2) Bayer's heartworm preventive Advantage Multi, which Merial claimed falsely advertised superiority over Merial's Heartgard Plus product.  It is those claims, and the underlying ads that they challenge, that are at the heart of this motion for partial summary judgment.

### 3.  __The 100% Efficacy Claims__.

Adopting the old adage that the best defense is a good offense, Merial's complaint attacked Bayer for also suggesting in its ads that Bayer's flea and tick control products were 100% effective.  Among other things, Merial challenged: (_i_) an old ad (discontinued in 2010) for an old product (Advantage) that was not even on the market any more (the "Frisblade Ad"); (_ii_) an old domain name (nofleas.com) that Bayer has not cited in any advertising or promotion since approximately 2007 and that was being used only to automatically redirect Internet users who may have bookmarked the old address to Bayer's current website at www.petparents.com; and (_iii_) a recent ad for K9 Advantix II (the "Pooch Protest"

7

ad) in which Bayer truthfully advertised that its product repels fleas and ticks whereas Frontline Plus does not.[2]  First Amended Complaint ("FAC") ¶¶ 91-93. Merial alleged that all three of these "advertisements" may falsely communicate that Bayer's products are 100% effective over 30 days ("100% Efficacy Claims"), though Merial expressly conditioned its claims on a prior finding that its own ads also were false.  *See, e.g.,* FAC ¶ 92 ("To the extent Merial's challenged advertising is determined to imply falsely that its product is 100% effective, so too does this [Bayer] advertisement falsely imply that K9 Advantix II is 100% effective"); ¶ 93 ("If Merial's FRONTLINE PLUS advertisements . . . constitute false advertising . . . by implying 100% efficacy of FRONTLINE PLUS, then so too would Bayer's advertisements that imply 100% efficacy of its flea and tick preventative products").

On the merits, Bayer has powerful defenses to these claims.  Each of these "ads" is completely distinguishable from Merial's ninja ads, and Bayer stands by the truthfulness and accuracy of its ads.  But that is an academic issue because, in

---

[2]   Merial also challenges Bayer's slogan "don't give fleas a biting chance" as falsely communicating that Bayer's products kill 100% of fleas.  FAC ¶ 92. Bayer disagrees and intends to defend against this claim.  Indeed, this very slogan was the subject of an NAD proceeding in which NAD ruled that the slogan is mere puffery and thus not actionable.  Hughes-Coons Decl., Ex. N, *Animal Health Division of Bayer HealthCare, LLC (Advantage and K9 Advantix)*, Case # 5200 (Aug. 4, 2010).

any event, each of these ads has run its course.  The Frisblade Ad has not been used since 2010, it advertises a product Bayer does not sell anymore, and Bayer has committed in writing that it will not use this ad ever again.  Hughes-Coons Decl. ¶¶ 18-22.  The domain name "nofleas.com" has not been advertised or promoted for years; for a time, it was used only for automatic redirection to Bayer's current website, but even that role is over as the domain name has been deactivated, and Bayer has committed in writing that it will never use this domain name again.  *Id.* ¶¶ 19, 22.  And the Pooch Protest ad, which was run during the 2011-2012 flea and tick control seasons, has run its course and all of its executions will be out of the market by the end of next month.  *Id.* ¶¶ 20, 22.  Again, Bayer has affirmed to Merial, in writing, that it will not use this ad ever again in the future; further, Bayer also committed that it would never again use the animation in the Pooch Protest ad to which Merial had objected.  *Id.* ¶¶ 20-22.  Because all of these ads have been permanently discontinued and will not be used again, there is nothing to fight about and no need for the Court to decide whether to enjoin them.

Nor is there any existing case or controversy about alleged claims by Bayer that its products are 100% effective over the course of an entire month.  Bayer denies that its advertisements have implied that message or that its sales force has ever made such claims; like Merial's products, Bayer's products are highly

9

efficacious, but no flea and tick control product can guarantee that it kills 100% of fleas and ticks for an entire 30 day period.  In any event, Bayer hereby affirms that it will not advertise that its current products are 100% effective against fleas and ticks for an entire 30 days, which provides the same relief Merial is seeking by injunction and moots any claim relating to such alleged communications.  *Id.* ¶ 21.

### 4.  <u>**The Blagburn Advertising Claims**</u>.

The second set of claims that Merial tacked on to its declaratory judgment complaint relate to Bayer's advertisements, starting in January 2011, to inform veterinarians of the results of a study conducted by Dr. Byron Blagburn. Dr. Blagburn, a leading parasitologist, studied the efficacy of four leading heartworm preventives, including Advantage Multi and Merial's Heartgard Plus, against a strain of heartworm known as the MP3 strain (the "Blagburn Study").  Dr. Blagburn found that Advantage Multi was the ***only*** preventive in his study that was 100% effective against the MP3 strain of heartworm after a single dose (which is the testing regimen used by the FDA when testing heartworm product efficacy). By comparison, 7 out of 8 dogs treated with Heartgard Plus had heartworms remaining after treatment. *Id.*, Ex. E at 192.

In its FAC, Merial challenges six of Bayer's advertisements related to the Blagburn Study, alleging that they either expressly or implicitly falsely claim that

(1) Advantage Multi is generally superior to Heartgard Plus; (2) heartworms have developed resistance to Heartgard Plus, (3) Heartgard Plus is only 12% effective in preventing heartworm disease, and (4) a single dose is clinically appropriate (collectively, the "Blagburn Claims").[3]  FAC ¶ 28.  Its FAC seeks injunctive relief preventing any future publication of these advertisements and related statements by Bayer's sales representatives.  *Id.*, Prayer for Relief.

As Bayer has informed Merial and states again in the attached declaration of Cynthia Hughes-Coons, all six of the Blagburn Advertisements have been discontinued for reasons largely unrelated to this litigation, and Bayer affirms that it will no longer use any of these ads and that its sales representatives will not make any of the challenged statements.  Hughes-Coons Decl. ¶¶ 11-17, 22, 23.  As with the discontinued ads related to Merial's 100% Efficacy Claims, these actions

---

[3]    These six advertisements are (1) a press release dated January 2011 describing the Blagburn Study (the "Press Release"), (2) a brochure that Bayer distributed at the 2011 North American Veterinary Conference (the "2011 NAVC Brochure"), (3) a facsimile sent to veterinarians informing them of the Blagburn Study (the "Dear Doctor Fax"), (4) an advertisement featuring pictures of four beakers (the "Beaker Ad"), (5) a three-dimensional mailer in the shape of a beaker (the "3D Mailer") and (6) a public service announcement encouraging consumers to speak with their veterinarians about new developments in the prevention and treatment of heartworm, but that did not reference either Bayer or the Blagburn Study (the "PSA") (together, the "Blagburn Advertisements").  Hughes-Coons Decl., Exs. F-J.

moot, as a matter of law, Merial's claims for injunctive relief against each of the advertisements cited in Merial's complaint.

To be clear, Bayer has not discontinued all advertising related to the Blagburn Study. Bayer strongly believes that it has the right to truthfully and accurately report the results of the Blagburn Study and vehemently denies that its current or past Blagburn-related advertising is in any way false or misleading. Thus, Bayer continues to advertise the results of the Blagburn Study in two more recent advertisements, which were used at the 2012 North American Veterinary Conference (the "2012 NAVC"). *See id.*, Exs. L-M. Although Bayer is confident that its 2012 NAVC ads are truthful and accurate, if Merial wants to challenge those ads and seek injunctive relief against them, it is free to pursue those claims at trial. What Merial may not do is continue to litigate over, and seek injunctive relief against, ads that Bayer already has discontinued and has affirmed will never be used again in the future.

## ARGUMENT

Summary judgment is a device intended to save time and expense when a party is able to demonstrate that there is "no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *accord Natural Answers, Inc. v. SmithKline Beecham Corp.,* 529 F.3d 1325,

1329 (11th Cir. 2008).  If summary judgment is appropriate against part of a

complaint, partial summary judgment is an effective mechanism to streamline the

issues remaining for trial.  *Shanklin Corp. v. Am. Packaging Mach., Inc.*, No. 95 C

1617, 2006 U.S. Dist. LEXIS 12419, at *6 (N.D. Ill. Mar. 21, 2006) (partial

summary judgment appropriate to further goal of Rule 56 to streamline litigation).

Partial summary judgment is appropriate in this case with respect to Merial's

claims for injunctive relief against the 100% Efficacy Claims and the Blagburn

Advertisements.

**I.      Merial's Claims for Injunctive Relief are Moot**

If a court can no longer redress the injuries claimed by the parties, a case is

moot and should be dismissed.  *Florida Wildlife Fed'n, Inc. v. S. Florida Water*

*Mgmt. Dist.*, 647 F.3d 1296, 1303-04 (11th Cir. 2011) ("Redressability is

established when a favorable decision would amount to a significant increase in the

likelihood that the plaintiff would obtain relief that directly redresses the injury

suffered.") (citation omitted).  In the false advertising context, a claim is rendered

moot if the defendant voluntary ceases the allegedly unlawful activity and there is

no risk that the offending advertisements will be repeated.  *LensCrafters, Inc. v.*

*Vision World, Inc.*, 943 F. Supp. 1481, 1497 (D. Minn. 1996) ("It is well-settled,

however, that the need for injunctive relief is obviated when the party accused of

using false or misleading advertising represents that the advertisements will not be repeated."); *Tambrands, Inc. v. Warner-Lambert Co.*, 673 F. Supp. 1190, 1198 (S.D.N.Y. 1987) ("Because I have no reasonable expectation that plaintiff will begin to use this advertising claim again, this issue is moot.").[4]

Here, there is no available injunctive relief that would remedy Merial's claims against the 100% Efficacy Claims or the Blagburn Advertisements – all of these have already been discontinued.

*First,* Bayer has discontinued the advertisements cited as 100% Efficacy Claims and affirms that, after the Pooch Protest ad completes its run next month, it will not use any of those ads again in the future.  Hughes-Coons Decl. ¶¶ 18-20, 22. Furthermore, although Bayer contests that its past advertising for K9 Advantix II,

---

[4]   *See also Consumers Union of the United States, Inc. v. Gen. Signal Corp.*, 724 F.2d 1044, 1052 (2d Cir. 1983) (denying preliminary injunction on mootness grounds because advertiser had already changed the objectionable commercial); *Am. Home Prods. Corp. v. Procter & Gamble Co.*, 871 F. Supp. 739, 761 (D.N.J. 1994) ("since defendants will no longer publish the [advertisement] in its present form, injunctive relief with respect to that insert is simply not required (even if the facts merited it), as precedent exists to support the conclusion that the need for injunctive relief is obviated where a defendant represents that an advertisement's transmission to the public will not be repeated"); *Am. Express Travel Related Servs. Co. v. Mastercard Int'l Inc.*, 776 F. Supp. 787, 791 (S.D.N.Y. 1991) ("When a defendant revises an allegedly infringing commercial and represents that the original commercial will not be broadcast in the future, the need for injunctive relief as to the original commercial is moot.").

K9 Advantix, Advantage II and Advantage implied 100% efficacy for 30 days,

Bayer affirms that its future advertisements will not communicate such a message.

*Id.* ¶¶ 21.  As such, all of Merial's claims against these three ads are moot and

should be dismissed.  *LensCrafters*, 943 F. Supp. at 1497.

     *Second*, Bayer has ceased running each of the Blagburn Advertisements

cited by Merial in its FAC and affirms that it will no longer use these

advertisements in the future.[5]  Hughes-Coons Decl. ¶¶ 12-17, 22.  Furthermore,

although Bayer does not concede that any such statements were made, Bayer will

instruct its sales representatives not to make (and its sales representatives will not

make) any claims of general superiority or claims that heartworm resistance exists

based on the Blagburn Study or Report, nor will Bayer make any claims that the

FDA is considering a recall of Heartgard based on the Blagburn Report.  *Id.* ¶ 23.

     In light of these events, there are no advertisements cited in Merial's

Amended Complaint to enjoin.[6]  The Court should, accordingly, grant partial

---

[5]    As noted above, Bayer is currently using two new advertisements related to the
Blagburn Study.  If Merial continues to press claims for injunctive relief, it
must do so against the current advertisements.  For the sake of efficiency,
Bayer would have no objection to treating the 2012 NAVC Ads as if they were
part of the complaint for purposes of allowing Merial to press its claims against
those updated versions of the ads, if Merial so requests.

[6]    Any argument by Merial that the voluntary cessation by Bayer of its
advertisements does not moot these claims would be unavailing.  The voluntary

summary judgment against Merial on its claims against the Bayer advertisements identified in the complaint.  An award of partial summary judgment is both legally proper and will promote efficiency in remaining discovery and at trial.

## II.    Merial's 100% Efficacy Claims Are Not Ripe

Merial's "100% Efficacy Claims" fail for the additional reason that they are not ripe for adjudication.  Ripeness requires that a case present "a real, substantial controversy between parties having adverse legal interests, a dispute definite and concrete, not hypothetical or abstract."  *White v. Baker*, 696 F. Supp. 2d 1289, 1299 (N.D. GA. 2010) (quoting *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979)).  A court evaluating ripeness must consider both the fitness

---

cessation exception to the mootness doctrine does not apply where there is no likelihood that the ads will be reused, or where the ads were discontinued for reasons other than the litigation.  *See Pensacola Motor Sales v. E. Shore Toyota, LLC*, 684 F.3d 1211, 1220 (11th Cir. 2012) (affirming denial of injunctive relief where the defendant had voluntarily ceased its advertising of certain websites and domain names and there was no likelihood of him repeating the conduct); *Christian Coalition of Fla., Inc. v. United States*, 662 F.3d 1182, 1196 (11th Cir. 2011) (affirming district court order that case is moot because the defendant stopped the offending behavior for reasons other than the pending litigation).  Bayer discontinued its advertisements for reasons largely unrelated to this litigation—the advertisements simply had run their course.  Hughes-Coons Decl. ¶¶ 11-20.  Indeed, in some cases Bayer discontinued the advertisements *before* this case was even filed.  Bayer also unambiguously affirms that these advertisements will not be used again in the future.  *Id.* ¶ 23.  Thus, to the extent the voluntary cessation doctrine applies, Bayer clearly meets it.

of the issues for judicial decision and the hardship to the parties (if any) caused by withholding court consideration.  *Bellsouth Telecomms., Inc. v. Nuvox Commc'ns, Inc.*, No. 1:04-cv-2790-WSD, 2006 U.S. Dist. LEXIS 65029, at *16 (N.D. Ga. Sept. 12, 2006).

Merial's 100% Efficacy Claims against Bayer's advertisements for Advantage, K9 Advantix, Advantage II and K9 Advantix II flea and tick products are not fit for judicial decision because they are contingent on the outcome of this case with respect to Merial's unrelated advertising for Frontline Plus.  In particular, Merial contends that if (and *only* if) its Frontline Plus ads imply 100% efficacy, then so do Bayer's K9 Advantix and Advantage products ads.  Merial's attempt to tie together the fate of these separate ad campaigns is nonsensical, since Bayer's advertisements involved different advertising claims and different products; whether Bayer's ads communicate a message of 100% efficacy has no bearing on whether Merial's very different ads communicate any such message.  More importantly, Merial's conditional pleading renders its 100% Efficacy Claims not fit for judicial decision until after this litigation is over.

Indeed, the fact that Merial says that it alleges a claim *only* if its own advertising first is found to be misleading essentially concedes that it would suffer no hardship if its 100% Efficacy Claims are dismissed – and certainly not the type

of immediate injury required by some courts. *See, e.g., McInnis-Misenor v. Me. Med. Ctr.*, 319 F.3d 63, 73 (1st Cir. 2003). If Merial truly believed that it was harmed by Bayer's advertising, it would not have plead its claims as conditioned on a separate litigation result. It also would not have waited over two years from the first airing of the relevant advertisements to file claims.

*American Woodmark Corp., v. La-Z-Boy Inc*., No. 09-cv-344, 2009 U.S. Dist. LEXIS 65189 (E.D. Va. Jul. 28, 2009), is on point. There, plaintiff sought a declaration that its use of the "CHERRY GROVE trademark" did not create a likelihood of confusion with defendants' asserted rights in the same trademark. Plaintiff also brought claims of infringement and unfair competition against defendants with respect to additional trademarks, unrelated to CHERRY GROVE, but made these claims "only in the event" that it is determined that plaintiff did not receive the sought after declaratory relief with respect to the CHERRY GROVE mark. *Id.* at *4 (citing complaint). The Court, noting that Rule 18(b) provides that "[a] party may join two claims even though one of them is contingent on the disposition of the other," found that the additional trademark infringement and unfair competition claims were not contingent on the CHERRY GROVE claims because they "involved different marks, different products, and different manufacturers." *Id.* at *7-9 ("a finding of likelihood of confusion in [the cherry

grove count] does not necessarily lead to a similar finding in [the conditional counts]").  Accordingly, the court dismissed the conditional claims for lack of ripeness.  *Id.*  Merial's 100% Efficacy Claims should be dismissed for the same reasons.

## Conclusion

For the foregoing reasons, Bayer respectfully requests that the court grant partial summary judgment against Merial on all of Merial's claims for injunctive relief against the Blagburn Advertisements listed in its Amended Complaint and the 100% Efficacy Claims.

This 5th day of November, 2012.

<div style="margin-left:40%">

Respectfully submitted,

WOMBLE CARLYLE SANDRIDGE & RICE PLLC


s/ Robert R. Ambler, Jr.
Robert R. Ambler, Jr.
(rambler@wcsr.com)
Attorney Bar Number: 014462
Russell A. Williams
(rwilliams@wcsr.com)
Attorney Bar Number: 141659

271 17th Street, NW, Suite 2400
Atlanta, GA 30363-1017
(404) 872-7000
(404) 879-2924 (fax)

</div>

DEBEVOISE & PLIMPTON LLP


s/ Michael Schaper
David H. Bernstein
(dhbernstein@debevoise.com)
Michael Schaper
(mschaper@debevoise.com)
Christopher J. Hamilton
(cjhamilton@debevoise.com)
Megan K. Bannigan
(mkbannigan@debevoise.com)
*Admitted Pro Hac Vice*

919 Third Avenue
New York, New York 10022
(212) 909-6737
(212) 521-7952 (fax)

*Attorneys for Defendant*
*Bayer HealthCare LLC*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| MERIAL LLC, | ) CIVIL ACTION FILE |
| | ) NO. 1:11-cv-02888-JOF |
|     Plaintiff and Counterclaim-Defendant, | ) |
| | ) |
| v. | ) |
| | ) |
| BAYER HEALTHCARE LLC, | ) |
| | ) |
|     Defendant and Counterclaim-Plaintiff. | ) |
| | ) |

### CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 5.1(C)

This is to certify that Bayer's Memorandum Of Law In Support of Its

Motion for Partial Summary Judgment was prepared using Times New Roman 14

point font in accordance with Local Rule 5.1(C).


                                         s/ Michael Schaper
                                         Admitted Pro Hac Vice
                                         Attorney for Bayer HealthCare LLC

Debevoise & Plimpton LLP
919 Third Avenue
New York, NY 10022
Telephone: (212) 909-6737
Email: mschaper@debevoise.com

Robert R. Ambler, Jr.
Womble Carlyle Sandridge & Rice, LLP
271 17th Street, NW, Suite 2400

Atlanta, GA 30363-1017
Telephone: (404) 872-7000
Email: rambler@wcsr.com