UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| MERIAL LLC,<br><br>    Plaintiff,<br><br>v.<br><br>BAYER HEALTHCARE LLC,<br><br>    Defendant. | Civ. Action No. 1:11-cv-02888-JOF<br><br><br><br>**JURY TRIAL DEMANDED** |

**MERIAL LLC'S RESPONSE TO BAYER HEALTHCARE LLC'S
STATEMENT OF UNDISPUTED FACTS**

Pursuant to Local Rule 56.1(b), Plaintiff Merial LLC ("Merial") hereby responds to Defendant Bayer Health Care LLC's ("Bayer") Statement of Undisputed Facts (ECF No. 91-2), which are set forth below for the convenience of the Court.  As stated in Merial's Opposition to Bayer's Motion for Partial Summary Judgment, filed concurrently herewith, Bayer's motion should have been filed as a Motion to Dismiss for lack of subject matter jurisdiction under Rule 12(b)(1).  As such, no statement of disputed facts is required by the Rules.  Merial files this document out of an abundance of caution, and such filing should not be construed as an admission that it is procedurally proper.

1

      1.      Merial LLC ("Merial") has challenged six of Bayer's advertisements related to a study conducted by Dr. Byron Blagburn in 2010 comparing the efficacy of four commercial heartworm preventatives, including Merial's Heartgard Plus and Bayer's Advantage Multi (the "Blagburn Study"), alleging that they either expressly or implicitly falsely claim that (a) Advantage Multi is generally superior to Heartgard Plus; (b) heartworms have developed resistance to Heartgard Plus, (c) Heartgard Plus is only 12% effective in preventing heartworm disease, and (d) a single dose is clinically appropriate (collectively, the "Blagburn Claims"). First Amended Complaint ¶¶ 32, 33, 38, 41.

**Merial's Response**

Disputed. Merial disputes Bayer's characterization of the Blagburn study as "comparing the efficacy of four commercial heartworm preventatives." The study purported to compare the efficacy of four commercial heartworm preventives, but used a strain of heartworm whose clinical significance is unknown, (Declaration of Cynthia Hughes-Coons ("Hughes-Coons Decl."), dated Nov. 5, 2012 (ECF No. 92), Ex. E (Blagburn Report) at 193)), and administered only a single dose in a 90-day period rather than the intended monthly dose, (*id.* at 193-94).

In addition, this statement is "supported by a citation to a pleading rather than to evidence," and therefore is not to be considered by the court under LR 56.1(B)(1)(b).

    2.    These six advertisements are (a) a press release dated January 2011 describing the Blagburn Study (the "Press Release"), (b) a brochure that Bayer distributed at the North American Veterinary Conference (the "NAVC Brochure"), (c) a facsimile sent to veterinarians informing them of the Blagburn Study (the "Dear Doctor Fax"), (d) an advertisement featuring pictures of four beakers (the "Beaker Ad"), (e) a three-dimensional mailer in the shape of a beaker (the "3D Mailer") and (f) a public service announcement encouraging consumers to speak with their veterinarians about new developments in the prevention and treatment of heartworm, but that did not reference either Bayer or the Blagburn Study (the "PSA") (together, the "Blagburn Ads"). Id. ¶ 28; Declaration of Cynthia Hughes-Coons ("Hughes-Coons Decl."), dated Nov. 5, 2012, Exs. F-J (Blagburn Ads).

**Merial's Response**

    Disputed. Merial admits that it has challenged six advertisements, but disputes Bayer's characterizations of the ads as follows:

    a)    Merial disputes that the Press Release "describe[es] the Blagburn Study." The Press Release purports to announce the publication of the Blagburn Report and to summarize its contents, but exaggerates and in some respects misstates the substance, conclusions, and import of the study. (*See, e.g.,* Hughes-Coons Decl., Ex. F at 1 (describing study as "groundbreaking;" quoting Dr. Blagburn, the lead author of the study as saying "This study provides *compelling* information. In this study involving the MP3 strain, Advantage Multi for Dogs was the only

3

product that protected all dogs from heartworm infection" (emphasis added); quoting Bayer's Director of Veterinary Services as saying, with respect to the import of the study, "Veterinarians need a product that they can trust at all times.").

b) Undisputed for purposes of this motion.

c) Undisputed for purposes of this motion.

d) Undisputed for purposes of this motion.

e) Undisputed for purposes of this motion.

f) Bayer has failed to cite to evidence in support of its claim that the PSA "did not reference either Bayer or the Blagburn Study."

3. All six of the Blagburn advertisements, however, have been discontinued by Bayer. Hughes-Coons Decl. ¶¶ 12-17.

**Merial's Response**

Disputed. Merial disputes that the Blagburn advertisements have been "discontinued." Bayer has not destroyed the Blagburn advertisements. (Van Brunt Dep. Tr. at 227:3-8.) Bayer's Vice President of Companion Animal Marketing is not aware of any steps taken to ensure that these ads are not distributed in the future. (*Id.* Tr. 228:10-23).

4

Immaterial. Bayer has only discontinued these six specific executions and has no plans to discontinue promoting the Blagburn Study in ways materially identical to the executions it claims to have discontinued. (*See* Merial's Statement of Additional Material Facts that Present a Genuine Dispute, *infra*, ¶¶ 4-8.) (Van Brunt Dep. Tr. at 176:8-177:5; 215:15-217:24); *compare* Hughes-Coons Decl., Exs. G, *with* Hughes-Coons Decl., Ex. L.

Merial has insufficient knowledge to admit or deny this statement beyond that stated above. *See* Merial's Rule 56(d) Mot. (filed December 6, 2012). Bayer has refused to allow Merial to depose Cynthia Hughes-Coons, notwithstanding the fact that Hughes-Coons's declaration is Bayer's only evidence cited for this statement. Moreover, Bayer has continued to deny and delay Merial's deposing other Bayer employees, despite Merial having requested them since August 24, 2012.

> 4. Bayer has affirmed that it will no longer use any of the Blagburn Ads and its sales representatives will not make any of the challenged statements. *Id.* ¶¶ 22-23.

**Merial's Response**

Disputed. In-house counsel Cynthia Hughes-Coons has represented that Bayer will no longer use any of the Blagburn Ads and its sales representatives will not make any of the challenged statements.

On November 29, 2012, however, Mr. Van Brunt testified that there were no plans or protocols in place regarding how instructions not to make challenged statements would be given to sales representatives or what consequences Bayer would impose for disobeying instructions. (Van Brunt Dep. Tr. 281-82; 284:8; 285:10-20).

As of November 29, 2012, Mr. Van Brunt, who is responsible for pet product marketing at Bayer, was aware of no steps to ensure either that extant Blagburn Ads had not been distributed in 2012 or that they will not be distributed in the future. (Van Brunt Dep. at 227:3-229:7.)

Merial has insufficient knowledge to admit or deny this statement beyond that stated above. *See* Merial's Rule 56(d) Mot. (filed December 6, 2012). Bayer has refused to allow Merial to depose Cynthia Hughes-Coons, notwithstanding the fact that Hughes-Coons's declaration is Bayer's only evidence cited for this statement. Moreover, Bayer has continued to deny and delay Merial's deposing

other Bayer employees, despite Merial having requested them since August 24, 2012.

Immaterial.  Bayer is promising only that it will not run the six specific Blagburn ads that Merial has complained of.  (*See* Merial's Statement of Additional Material Facts that Present a Genuine Dispute, *infra*, ¶ 4.)  Bayer intends to continue promoting the Blagburn Study. *Id.* ¶ 5.  Bayer is not promising that it will not use the 12% efficacy number in future advertising. *Id.* ¶ 6.  Bayer is not promising that it will not claim superiority of its product based on the Blagburn study. *Id.* ¶ 7.  Bayer is not committing that it will not make any resistance claims in the future. *Id.* ¶ 8.

> 5. Merial also challenged four of Bayer's advertisements relating to its flea and tick products K9 Advantix II, K9 Advantix, Advantage II and Advantage: (a) a commercial for Advantage titled "Frisbee Turns Into a Saw That Kills Fleas" ("Frisblade Ad"), (b) a video advertisement for K9 Advantix II called "Pooch Protest", (c) the web domain name "nofleas.com", and (d) the slogan "Don't give fleas a biting chance" on Bayer's website (the "Advantage Ads"). First Amended Complaint ¶¶ 91-93; Hughes-Coons Decl., Ex. K (screen shot from www.petparents.com).

**Merial's Response**

Undisputed for purposes of this motion.

7

> 6. The Frisblade Ad for Advantage is no longer in circulation and has not been in circulation since October 2010. Advantage is no longer on the market in the United States. Hughes-Coons Decl. ¶ 18.

**Merial's Response**

Merial has insufficient knowledge to admit or deny this statement. *See* Merial's Rule 56(d) Mot. (filed December 6, 2012). Bayer has refused to allow Merial to depose Cynthia Hughes-Coons, notwithstanding the fact that Hughes-Coons's declaration is Bayer's only evidence cited for this statement. Moreover, Bayer has continued to deny and delay Merial's deposing other Bayer employees, despite Merial having requested them since August 24, 2012.

> 7. Bayer has not used the domain name nofleas.com for a website for about five years, and has not advertised or promoted that domain name as a Bayer web address since 2007. From 2008 through October 2012, the domain name was used only to automatically redirect Internet users (such as those who may have bookmarked Bayer's prior website) to Bayer's current website at www.petparents.com. The domain name nofleas.com is no longer active and has not been active since October 2012. *Id.* ¶ 19.8.

**Merial's Response**

Merial has insufficient knowledge to admit or deny this statement. *See* Merial's Rule 56(d) Mot. (filed December 6, 2012). Bayer has refused to allow Merial to depose Cynthia Hughes-Coons, notwithstanding the fact that Hughes-

Coons's declaration is Bayer's only evidence cited for this statement. Moreover, Bayer has continued to deny and delay Merial's deposing other Bayer employees, despite Merial having requested them since August, 2012.

> 8. Bayer has affirmed that the advertisement called "Pooch Protest" will no longer be in circulation as of year-end. Bayer has also affirmed that it will not use the cartoon animation from the "Pooch Protest" ad in any future advertising. *Id.* ¶ 20.

**Merial's Response**

Disputed. Merial disputes that "Bayer has affirmed that the advertisement called Pooch Protest will not longer be in circulation as of year end" and that "Bayer has also affirmed that it will not use the cartoon animation from the 'Pooch Protest' ad in any future advertising." Bayer's Vice President of Companion Animal Marketing testified that Bayer is "still assessing" whether the Pooch Protest Ad has "reached its useful life." (Van Brunt Dep. at 267:22-23.) Mr. Van Brunt also testified that Bayer may continue to use portions of the Pooch Protest Ad, including the animation that is the centerpiece of Merial's complaint. (*Id.* 275:2-276:13.)

Merial has insufficient knowledge to admit or deny this statement beyond that stated above. *See* Merial's Rule 56(d) Mot. (filed December 6, 2012). Bayer has refused to allow Merial to depose Cynthia Hughes-Coons, notwithstanding the

fact that Hughes-Coons's declaration is Bayer's only evidence cited for this statement. Moreover, Bayer has continued to deny and delay Merial's deposing other Bayer employees, despite Merial having requested them since August 24, 2012.

       9.    Bayer, again, has also affirmed that it no longer plans to use the Advantage Ads in the future. *Id.* ¶ 22.

**Merial's Response**

Merial has insufficient knowledge to admit or deny this statement. *See* Merial's Rule 56(d) Mot. (filed December 6, 2012). Bayer has refused to allow Merial to depose Cynthia Hughes-Coons, notwithstanding the fact that Hughes-Coons's declaration is Bayer's only evidence cited for this statement. Moreover, Bayer has continued to deny and delay Merial's deposing other Bayer employees, despite Merial having requested them since August, 2012.

This is a mere conclusory statement with no underlying factual support.

      10.    While Bayer contests that its past or current advertising for K9 Advantix II, K9 Advantix, Advantage II and Advantage implies 100% efficacy for 30 days, Bayer affirms that its future advertisements will not communicate that message. *Id.* ¶ 21.

**<u>Merial's Response</u>**

Merial has insufficient knowledge to admit or deny this statement. *See* Merial's Rule 56(d) Mot. (filed December 6, 2012). Bayer has refused to allow Merial to depose Cynthia Hughes-Coons, notwithstanding the fact that Hughes-Coons's declaration is Bayer's only evidence cited for this statement. Moreover, Bayer has continued to deny and delay Merial's deposing other Bayer employees, despite Merial having requested them since August 24, 2012.

Immaterial. Insofar as Bayer contests that its advertising implies 100% efficacy for 30 days, Bayer's affirmance "that its future advertisements will not communicate that message" does not bear on the question whether Bayer will resume the complained-of conduct in the future.

This statement does not comply with LR 56.1(B)(1) because it is "stated as an issue or legal conclusion." LR 56.1(B)(1)(c).

## STATEMENT OF ADDITIONAL MATERIAL FACTS THAT PRESENT A GENUINE DISPUTE

Pursuant to Local Rule 56.1(B)(2)(b), Merial asserts that the following are additional material facts that present a genuine dispute.

1. Upon being questioned about Bayer's assertion that it discontinued the Blagburn Ads "for reasons unrelated to this litigation," Bayer' Vice President of Marketing for Companion Animals, David Van Brunt, admitted that he did not recall whether there was a direct connection.  (Van Brunt Dep. at  217:25-218:11.)

2. Van Brunt admitted that he believed Bayer had not done anything wrong in using a 12% figure to describe efficacy of Merial's product in the Blagburn Ads without reporting that the Blagburn Report concluded that Merial's product was 95.6% effective.  (Van Brunt Dep. at 107:9-108:5)

3. Van Brunt testified that every Blagburn ad "was appropriately referenced and indicated and tied back to the study."  (Van Brunt Dep. at 10-11.)

4. Bayer intends to continue promoting the Blagburn Study.  (Van Brunt Dep. at 176:8-177:5.)

5.  Van Brunt testified that Bayer will no longer use any of the six specific Blagburn Ads enumerated in Merial's complaint, but affirmed that Bayer is not committing that it won't use the information contained in the Blagburn Ads in a new ad. (Van Brunt Dep. Tr. at 219:18-220:6.)

6.  Van Brunt testified that Bayer is not promising that it will not use the 12% efficacy number in future advertising. (Van Brunt Dep. Tr. at 220:12-18.)

7.  Van Brunt affirmed that Bayer is not promising that it will not claim superiority of its product based on the Blagburn study. (Van Brunt Dep. Tr. at 220:19-23.)

8.  Van Brunt affirmed that Bayer is not committing that it will not make any resistance claims in the future. (Van Brunt Dep. Tr. at 221:6-222:20.)

9.  Van Brunt testified that Bayer's reason for discontinuing the Pooch Protest Ad is not because Bayer is acknowledging that the ads were wrongful either legally or ethically. (Van Brunt Dep. Tr. at 273:10-274:10.)

10. Bayer has issued a new Blagburn "detailer" that removes the 12% bar graph that Merial complained about. (Van Brunt Dep. Tr. at 214-217.)

11. Van Brunt testified that Bayer was not committing not to use the same, objectionable information contained in the Blagburn Ads in a "new way" nor

would Bayer promise not to "claim superiority of its product" using the same information presented in the Blagburn Ads.  (Van Brunt Dep. Tr. at 221:2-223:19).

DATED:  December 6, 2012

          Respectfully submitted,

          McKOOL SMITH, P.C.

          s/ Jill Wasserman
          Courtland L. Reichman
            (Ga. Bar No. 599894)
          Jill Wasserman
            (Ga. Bar No. 739662)
          1201 Peachtree, Suite 200
          400 Colony Square
          Atlanta, GA 30361
          (404) 572-4600

          Steven Callahan
            (Admitted *Pro Hac Vice*)
          300 Crescent Court, Suite 1500
          Dallas, TX 75080
          (214) 978-6357

          *Counsel for Plaintiff Merial LLC*

## CERTIFICATE OF COMPLIANCE WITH LR 5.1(C)

This is to certify that the foregoing document was prepared using Times New Roman 14 point font in accordance with LR 5.1(C).

DATED:  December 6, 2012

s/ Jill Wasserman<br>
Jill Wasserman

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was filed electronically pursuant to LR 5.1 on December 6, 2012 using the Court's CM/ECF system, which will automatically send e-mail notification of the filing to the parties' attorneys of record.

Michael Schaper (mschaper@debevoise.com)
Robert Ambler (rambler@wcsr.com)

s/ Jill Wasserman<br>
Jill Wasserman<br>
Attorney for Merial LLC

McKool 846455v1